140 N.J. Super. 354 (1975)
356 A.2d 394
IN THE MATTER OF: THE PARSIPPANY-TROY HILLS EDUCATION ASSOCIATION, AN INCORPORATED NEW JERSEY ASSOCIATION, AND STEPHEN MARABETTI, ANNA HONIGFELD, CHARLES KUGELMEYER, ABRAHAM LERNER, PATRICIA DANISHEK AND MARY Mc NAY, ALL AS OFFICERS AND/OR NEGOTIATING MEMBERS OF THE PARSIPPANY-TROY HILLS EDUCATION ASSOCIATION, AND ALL MEMBERS OF THE PARSIPPANY-TROY HILLS EDUCATION ASSOCIATION AS A CLASS, CHARGED WITH CONTEMPT OF COURT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1975.
Decided December 2, 1975.
*356 Before Judges KOLOVSKY, BISCHOFF and BOTTER.
Mr. Theodore M. Simon argued the cause for appellants (Messrs. Goldberg & Simon, attorneys).
Mr. Clifford J. Weininger, First Assistant Prosecutor, argued the cause for respondent (Mr. Donald G. Collester, Morris County Prosecutor, attorney).
PER CURIAM.
Defendants appeal from the sentence imposed on their plea of guilty to a charge of contempt of court.
The summary proceeding to punish for contempt, see R. 1:10-2, was instituted by an order to show cause entered and served September 29, 1975. The order, returnable September 30, 1975, required defendants to show cause why they should not be adjudged guilty of penal contempt of court for their failure to obey an order entered on September 25, 1975 in an action which the Parsippany-Troy Hills Board of Education (board) had instituted against the above-named defendants "and all members of the Parsippany/Troy Hills Education Association as a class."
The order to show cause recited, as the basis for its issuance, that it appeared from an affidavit filed by the board that
* * * an Order restraining strike was issued out of this Court on September 25, 1975, demanding the Defendants to cease and desist from striking, picketing or otherwise interrupting the educational *357 process of the Parsippany/Troy Hills school district and that said Defendants have failed and refused to obey the command of such Order, * * *."
On the return of the order to show cause each defendant pleaded guilty to the contempt of court charged. Argument was limited to the question of the penalties to be imposed. The judgment entered on September 30, 1975 at the conclusion of the hearing found each defendant guilty of contempt of court and embodied the following penalty provisions:
[The Association is] fined $25,000. per day commencing on Thursday, September 25, 1975, and including Friday, September 26, 1975, Monday, September 29, 1975, and Tuesday, September 30, 1975, that the Association remains in contempt of the restraining Order; and said $25,000. per day fine is to continue, including Saturdays and Sundays, until such time that the Association complies with the restraining Order issued by the Honorable Robert Muir, Jr., Judge of the Superior Court of Morris County, on September 25, 1975.
With respect to the individual defendants the judgment provided that:
[a] [Each] be fined in the amount of $500. per day, commencing on Thursday, September 25, 1975, and including Friday, September 26, 1975, Monday, September 29, 1975, and Tuesday, September 30, 1975; and that said fine continue at the rate of $500. per day, including Saturdays and Sundays, until the aforementioned defendants comply with the Order of the Honorable Robert Muir, Jr., Judge of the Superior Court of Morris County, issued on September 25, 1975; and said fine is to be deducted from the pay-checks of [the respective individual defendants] by the Parsippany/Troy Hills Board of Education;
and [b] [Each] be incarcerated in the Morris County Jail for thirty days per day that they fail to comply with the Order of the Superior Court of New Jersey, Chancery Division, issued by Robert Muir, Jr., Judge of the Superior Court of Morris County, on September 25, 1975, and that the days included within this Order shall commence on Thursday, September 25, 1975, and include Friday, September 26, 1975, Monday, September 29, 1975, and Tuesday, September 30, 1975; and that this Order shall continue, including Saturdays and Sundays, until compliance with said Order;
but that [c] imposition of the custodial sentence shall be suspended, provided [the individual defendants], as officers and/or negotiating members of the Parsippany/Troy Hills Education Association, comply with such Order on Wednesday, October 1, 1975, by 9:00 o'clock in the forenoon of that day."
*358 The strike was settled before the schools opened on October 1 and the provision for suspension of the custodial sentences imposed became effective. Thereafter, on motion by the individual defendants, the trial judge entered an "order altering judgment" which reduced the $2,000 fines imposed on the individuals to $1,000, the maximum fine authorized in case of individuals by the ruling in In re Buehrer, 50 N.J. 501, 522 (1967), that with respect to such individuals, "in a summary prosecution for contempt the punishment may not exceed six months' imprisonment or a fine of $1,000 or both, subject to the provisions for probation in N.J.S.A. 2A:168-1 et seq."
The amendatory order deleted from the prior judgment the paragraphs quoted above as paragraphs 2 (a) and 2 (b) and substituted therefor the following:
(a) With respect to the fine:
* * * said defendants are each fined $1,000, and said fine is to be deducted from the pay checks of Stephen Marabetti, Anna Honigfeld, Charles Kuglemeyer, Abraham Lerner, Patricia Danishek and Mary McNay by the Parsippany/Troy Hills Board of Education with a pro rata deduction [from any] remaining pay checks for the 1975-76 school year so that the entire fine may be paid in equal installments from every pay check during the remainder of the 1975-76 school year.
(b) With respect to the custodial sentence:
[It is] further ordered that [the individual defendants] are to be incarcerated in the Morris County jail for 120 days.
No change was made in the provision for suspension of the custodial sentences.
Defendants' suggestion that they pleaded guilty only to a one-day violation of the September 25 order  a violation on September 29, 1975  is frivolous and contrary to the record. As their counsel conceded at oral argument before us, they pleaded guilty to the contempt charged in the order to show cause  their failure and refusal to obey the command *359 of the September 25 order. The scope and extent of defendants' contemptuous conduct is relevant only to the question of the penalties to be imposed, a subject we treat later in this opinion.
There is no merit to the contention of the individual defendants that they were entitled to a jury trial because the fines imposed were $1,000 rather than $500, the maximum now provided by statute in case of persons convicted as disorderly persons. See N.J.S.A. 2A:169-4.
Contempt is not a disorderly persons offense. N.J.S.A. 2A:169-4 is not controlling on the question as to what fine may be imposed on an individual found guilty in summary contempt proceedings. In re Jersey City Education Ass'n, 115 N.J. Super. 42, 54, 57 (App. Div. 1971), certif. den. 58 N.J. 603 (1971), cert. den. 404 U.S. 948, 92 S.Ct. 268, 30 L.Ed. 2d 265 (1971). The $1,000 fines imposed in this summary contempt proceeding on the individual defendants are expressly authorized by In re Buehrer, supra.
Further, there is no substance to defendants' contention that the fine "imposed on appellant association converted the charge against it from a petty offense into a serious offense requiring trial by jury." See In re Fair Lawn Education Ass'n, 63 N.J. 112 (1973); In re Jersey City Education Ass'n, supra.
As was said in Rankin v. Shanker, 23 N.Y.2d 111, 295 N.Y.S.2d 625, 242 N.E.2d 802 (Ct. App. 1968)  a quotation cited with approval in both Fair Lawn and Jersey City, supra,
The determination, whether it is serious or petty under the decisions, turns not on the amount of the fine which may be imposed but solely on the length of the prison sentence. * * * Consequently, as the cases reveal, the fine, even though sizeable in amount, furnishes no valid criterion for the defendants' claim that the contempt charged against them constitutes a serious crime. [295 N.Y.S.2d at 632, 242 N.E.2d at 807-808]
*360 We agree with defendants' contention that it was improper for the judgment to incorporate provisions providing for additional penalties if they should continue to disobey the September 25 order. In a penal or criminal contempt proceeding the judgment must be a "finite sentence," N.J. Dept. of Health v. Roselle, 34 N.J. 331, 339 (1961), fixing punishment for defendants' prior contemptuous conduct in willfully challenging the authority of the court. Roselle, supra at 337. If further acts of contempt are committed, prosecution and punishment therefor are available only in proceedings thereafter to be instituted charging such new violations.
However, the error in including punishment for future acts in the judgment originally entered  the "order altering judgment" eliminated that provision as far as the individual defendants are concerned  is of no moment. In view of defendants' appeal it is for us to fix and determine the appropriate penalties for defendants' prior contemptuous conduct. "It is our duty as an appellate court in summary contempt cases to adjudge punishment as well as guilt." Newark Bd. of Ed. v. Newark Teachers Union, 114 N.J. Super. 306, 318 (App. Div. 1971), certif. den. 58 N.J. 605 (1971), cert. den. 404 U.S. 950, 92 S.Ct. 275, 30 L.Ed.2d 267 (1971). That duty stems from R. 2:10-4 which provides:
Every summary conviction by a court for contempt shall be reviewable on the law and the facts. The appellate court shall render such judgment and order for enforcement thereof as it deems just under the circumstances.
The only limitation on our power, beyond that applicable to the trial court, is that we may not impose a "greater sentence" than that which the trial court imposed. State v. De Bonis, 58 N.J. 182 (1971); State v. Nash, 64 N.J. 464 (1974).
Our consideration as to the appropriate punishment to be imposed may fairly start with the "celebrated" case referred *361 to in In re Fair Lawn Education Ass'n, supra, United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947), in which the court said:
Sentences for criminal contempt are punitive in their nature and are imposed for the purpose of vindicating the authority of the court. * * * The interests of orderly government demand that respect and compliance be given to orders issued by courts possessed of jurisdiction of persons and subject matter. One who defies the public authority and willfully refuses his obedience, does so at his peril. In imposing a fine for criminal contempt, the trial judge may properly take into consideration the extent of the willful and deliberate defiance of the court's order, the seriousness of the consequences of the contumacious behavior, the necessity of effectively terminating the defendant's defiance as required by the public interest, and the importance of deterring such acts in the future. Because of the nature of these standards, great reliance must be placed upon the discretion of the trial judge.
The trial court properly found the defendants guilty of criminal contempt. Such contempt had continued for 15 days from the issuance of the restraining order until the finding of guilty. Its willfulness had not been qualified by any concurrent attempt on defendants' part to challenge the order by motion to vacate or other appropriate procedures. Immediately following the finding of guilty, defendant Lewis stated openly in court that defendants would adhere to their policy of defiance. * * *

* * * * * * * *
* * * a court which has returned a conviction for contempt must, in fixing the amount of a fine to be imposed as a punishment or as a means of securing future compliance, consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant. [330 U.S. at 302-304, 67 S.Ct. at 700-701, 91 L.Ed. at 917-918]
Unfortunately  due in part to the fact that defendants pleaded guilty so that no detailed proofs of the violations of the September 25 order were offered  the record submitted to us is inadequate to present to us the factors which we desire to take into consideration in determining appropriate punishment.
We therefore remand the cause to the trial court so that the prosecutor and the defendants may, at a hearing to be held within 20 days of the filing of this opinion, offer evidence relevant and material to the issue of punishment.
*362 Without limiting the generality of the foregoing, such evidence should include that relating to:
(a) The specific conduct, actions and statements of the individual defendants and the Association and its members with reference to the court's order of September 25, 1975;
(b) The seriousness of the consequences of the contumacious behavior and the other factors referred to in United Mine Workers, supra;
(c) The financial resources and income of the several defendants. This should include, as far as defendant Association is concerned, submission of its certificate of incorporation, by-laws, the minutes of its meetings and its financial records, as well as oral testimony, so that we may determine what financial resources are or may be available to it by way of dues, assessments, loans or grants promised to it or which it may obtain from others.
Once the hearing on the remand is completed, defendants shall forthwith order and cause to be filed with this court, as soon as reasonably possible: (1) a transcript of the hearing on the remand and (2) a transcript of the proceedings (including the oral opinion of Judge Muir) held on September 25, 1975, in the matter of "The Parsippany/Troy Hills Board of Education, in the County of Morris, plaintiff v. The Parsippany/Troy Hills Education Association, et al., defendants."
Defendants shall serve and file a supplemental brief within 20 days after receipt of the transcripts. The prosecutor shall serve and file an answering supplemental brief within 20 days after receipt of defendants' brief.
Remanded. We retain jurisdiction.